## J. Miller Co. and Selective Insurance Company *v.* Samuel E. Mixter.

Argued April 21, 1971, before Judges CRUMLISH, JR., KRAMER and MENCER, sitting as a panel of three.

*Irwin M. Ringold,* with him *Alexander J. Jaffurs,* for appellants.

*Thomas Hollander,* with him *Evans, Ivory & Evans,* for appellee.

OPINION BY JUDGE MENCER, May 25, 1971:

In this workmen's compensation case, the only question before us is whether at the time he suffered serious injuries the claimant, Samuel E. Mixter, was an

independent contractor or was an employee of the defendant, J. Miller Company. The referee made an award in favor of the claimant. An appeal was taken by the defendant and compensation carrier to the Workmen's Compensation Board and this Board affirmed the referee. Thereupon an appeal was taken to the Court of Common Pleas of Allegheny County which affirmed the decision of the Workmen's Compensation Board. This appeal followed and we reverse.

Few can, and none should, be insensitive to the personal tragedy that befalls individuals. Such a personal tragedy struck the claimant on September 3, 1967, when he was engaged in making repairs to his tractor which was parked at the time in the driveway by his home. It is not disputed that the injuries sustained by claimant when the right front tire and rim assembly of the tractor exploded, striking claimant violently on the head, were permanent and disabling and resulted in the loss of sight in his right eye. The realization of the seriousness of such injuries and that claimant has not been able to work since the accident naturally engenders such a degree of sympathy that it is difficult to be objective about the legal status of the claimant at the time of the accident. It is understandable that all charged with the responsibility of determining the claimant's legal relation to the defendant, J. Miller Company, at the time of the accident would have a tendency to reach a conclusion that would result in financial benefits to the claimant, as opposed to a conclusion that would leave the claimant to his own resources to cope with the serious consequences of the injuries which he sustained. However, the determination of the question as to whether claimant was an independent contractor or employee at the time of the accident must be made in accordance with established legal principles and the terms of the contract

entered into by the parties, rather than upon a basis of empathy.

The courts have not formulated a hard and fast definition for the determination of whether any given relationship is one of independent contractor or that of employer-employee. They have, however, set forth indicia of such relationship to be used as guides in making such a determination, some of which are: Control of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether work is a part of regular business of the employer, and also the right of employer to terminate the employment at any time. *Feller v. New Amsterdam Casualty Co.*, 363 Pa. 483, 70 A. 2d 299 (1950); *Johnson v. Angretti et al.*, 364 Pa. 602, 73 A. 2d 666 (1950). These indicia are not to be considered as circumstantial in nature and whether some or all of them exist in any given situation is not absolutely controlling as to the outcome; each case must be determined on its own facts.

To be entitled to compensation the claimant had the burden of proving that at the time of his injury he was an employee of the defendant, J. Miller Company. *Herman v. Kandrat Coal Co.*, 205 Pa. Superior Ct. 117, 208 A. 2d 51 (1965). As stated in *Sones v. Thompson Furniture Co.*, 163 Pa. Superior Ct. 392, 394, 62 A. 2d 116, 117 (1948): "The relation of employer and employee, as contemplated by the Workmen's Compensation Act . . . arises only where there is a contract of hiring, express or implied . . . and the burden of proving that [claimant] was an employee . . . was upon claimant." We disagree with the conclusion of the

compensation authorities and the court below that the claimant in this case met the burden imposed upon him.

At the time of the accident, Mixter was making repairs to his tractor, pursuant to a written contract entered into on August 21, 1967, between him and the defendant carrier, and the relationship of the parties arises from this contract. By the terms of the contract, Mixter was to transport property for hire for defendant carrier in his privately owned tractor truck, with no specific restrictions as to routes to be chosen to make delivery of the property to be transported. He was to be paid 74.5% of the gross weekly with 25.5% of the gross to be retained by defendant. Mixter, in accordance with Paragraph 8 of the contract, was to "pay all costs of operation which may include but shall not be limited to the following: maintenance, repairs, fuels, lubricants, tires, etc.; wages or other remuneration of operators, drivers and helpers; public liability, property damage and cargo insurance on the equipment while not being operated in service of CARRIER; payments for injury or damages to the operators, drivers and helpers and to the equipment whether the same occur while the equipment is being operated in the service of the CARRIER or otherwise; insurance coverage for collision, fire, theft or other occurrence or catastrophe; workmen's compensation, unemployment insurance, social security or other similar taxes, insurance or benefits on the operator, drivers and helpers and in connection therewith [Mixter] shall make all payroll, tax or other deductions required by any applicable law or regulation; licenses, registration fees, toll charges, decals, use permits, weight, gasoline or other types of taxes, fees or exactions required of or on the equipment or on the use or operation thereof, including all reports connected with such matters (except those Carrier has agreed to pay in paragraph 4); dam-

ages to cargo caused by the fault or neglect of [Mixter] including any deductible amounts which may be included in the CARRIER's cargo insurance coverage, which are not covered by CARRIER's cargo insurance; and fines and penalties arising out of the use of said equipment."

The hiring of additional help and the selection of the driver or operator of the tractor was a matter of personal discretion with Mixter. Paragraph 2 of the contract provided "that [Mixter] is to furnish a competent, reliable and physically fit operator or driver together with any necessary helpers to operate said equipment as a part of the consideration hereof. [Mixter] represents that the driver or operator furnished for said equipment is familiar with State and Federal Motor Carrier Safety Laws and Regulations; that the furnishing of said operator or driver will not result in violation of any safety laws or regulations; that said driver or operator will comply with all safety laws and regulations and will cooperate with CARRIER in so doing by filing with CARRIER all log sheets, physical examination certificates, accident reports and other required reports, documents and data; and [Mixter] will comply with all state weight laws and will not accept loads in excess of the limits allowed by states through which the Equipment must travel."

It is significant to note that in paragraph 8 of the contract Mixter did agree to pay wages and charges incident to coverage of "workmen's compensation, unemployment insurance, social security or other similar taxes, insurance or benefits on the operator, drivers and helpers. . . ." The claimant was paid 74.5% of the gross, weekly, in accordance with the lease agreement, without any deductions by the defendant carrier for social security or any other withholding items.

Where a contract is let for work to be done by another in which the contractee reserves no control

over the means of its accomplishment, but merely as to result, the employment is an independent one establishing the relation of a contractee and contractor and not that of master and servant. *Gearhart v. Summit Fast Freight, Inc.,* 167 Pa. Superior Ct. 481, 75 A. 2d 606 (1950). In *Mature v. Angelo,* 373 Pa. 593, 596-597, 97 A. 2d 59, 60-61 (1953), Chief Justice Horace STERN said: "A servant is the employe of the person who has the *right* of controlling the manner of his performance of the work, irrespective of whether he actually *exercises* that control or not: (citations omitted).

"Where one is engaged in the business of renting out trucks, automobiles, cranes, or any other machine, and furnishes a driver or operator as part of the hiring, there is a factual presumption that the operator remains in the employ of his original master, and, unless that presumption is overcome by evidence that the borrowing employer *in fact* assumes control of the employe's *manner of performing the work,* the servant remains in the service of his original employer: (citations omitted).

"Facts which indicate that the servant remains the employe of his original master are, among others, that the latter has the right to select the employe to be loaned and to discharge him at any time and send another in his place, that the lent servant has the skill of a technician or specialist which the performance of the work requires, that the hiring is at a rate by the day or hour, and that the employment is for no definite period: (citations omitted).

"The mere fact that the person to whom a machine and its operator are supplied points out to the operator from time to time the work to be done and the place where it is to be performed does not in any way militate against the continuance of the relation of employe and employer between the operator and his original master: (citations omitted)."

The record in the instant case discloses that the only instructions that the claimant ever received from the defendant carrier were where to load and unload the cargo that was to be hauled. This was clearly control of the result only and not of the means of accomplishment. Applying the well-established tests of *Mature v. Angelo, supra,* to the facts in this case, it is clear that Mixter was an independent contractor. Mixter had the sole authority of selecting, paying and discharging any driver of the leased tractor. He alone could make necessary legal deductions from any payments made to a driver of the tractor. The responsibility for the workmen's compensation coverage was specifically by written agreement Mixter's and not the defendant carrier's.

Here the Workmen's Compensation Board and the court below base their conclusion of employer-employee relationship on the language in the lease that "for the duration of the lease [Mixter] leases Equipment unto Carrier for Carrier's exclusive possession, control, use and responsibility." In *Walton v. Harold M. Kelly, Inc.,* 218 Pa. Superior Ct. 28, 269 A. 2d 347 (1970), it was held that the Workmen's Compensation Board had erred in finding an employer-employee relationship based solely on interpretation of the trip lease which provided that the equipment leased "be deemed to be under the exclusive possession, control and use of the lessee. . . ." Although each case may be somewhat different and subject to being distinguished from any other case, yet *Walton v. Harold M. Kelly, Inc., supra,* sufficiently approximates the instant case to be considered controlling.

The terms of the lease in the instant case make it clear that the defendant carrier agreed to lease a truck and driver and that it was to remain in the control of Mixter despite any language in the lease to the con-

trary. Mixter agreed to transport property for the defendant carrier and received no specific instructions from said defendant on how this was to be done in relation to the means of accomplishing the delivery but merely received instructions as to where to load and unload the property to be transported. Mixter had the sole right to select drivers which would be on his payroll. Likewise, social security, unemployment insurance, withholding taxes and workmen's compensation coverage of the drivers were the responsibility of Mixter. These factors convince us that there is compelling evidence in the record which indicates clearly that Mixter was an independent contractor. The Workmen's Compensation Board and the court below capriciously disregarded the competent evidence of essential control by Mixter and must, for this reason, be reversed.[1]

An examination of the record also discloses that the lower court erred in corroborating the Board's erroneous statements that (1) "the Defendant would deduct from Claimant's money received as a result of freight hauled, payroll, tax and similar legal deductions"; (2) "Moreover, the Defendant reserved the right to deduct the required social security payments, Federal withholding taxes"; and (3) that in the instant case provision was made for the deduction by defendant of social security and other like charges. There is simply nothing in the record to support in any way these incorrect statements.

Furthermore, in this case, the written agreement executed by Mixter and the defendant carrier provided in part as follows: "12. Interpretation of the Agree-

---

[1] We can only upset a finding by the Workmen's Compensation Board if there has been a capricious disregard of competent evidence or if there is no evidence at all to support the finding. *McFarlane v. Mellon-Stuart Co.*, 205 Pa. Superior Ct. 66, 208 A. 2d 40 (1965).

ment. . . . The relationship between the CARRIER and [Mixter] shall be that of Independent Contractor and the employees of one party shall not be considered employees of the other party." While we are not bound by the nomenclature the parties applied to their relationship, yet the other terms of the agreement and the admitted facts establish that the parties correctly designated their relationship.

Judgment of the court below is reversed, and the claim petition is dismissed.