Workmen's Compensation Appeal Board of the Commonwealth of Pennsylvania and Ronald H. Teufel v. John F. Dupes, t/a Dupes' Garage and American State Insurance Co., Insurance Carrier; Ace-Doran Hauling & Rigging Co. and Protective Insurance Company, Insurance Carrier. Ace-Doran Hauling & Rigging Co., Appellant.

Argued January 8, 1976, before Judges KRAMER, WILKINSON, JR., and MENCER, sitting as a panel of three.

*David E. Lehman,* with him *McNees, Wallace & Nurick,* for appellant.

*Raymond F. Keisling,* with him *Will & Keisling,* and *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE KRAMER, March 15, 1976:

This is an appeal by Ace-Doran Hauling and Rigging Company from a decision of the Workmen's Compensation Appeal Board which ordered Ace-Doran to pay compensation for total disability to Ronald H. Teufel. The Board reversed a referee's decision which had held that Teufel was an employe of John F. Dupes, t/a Dupes' Garage (hereinafter Dupes), rather than an employe of Ace-Doran. We hold that the Board erred and reverse.

John F. Dupes and Frances W. Dupes are the co-owners of Dupes' Garage. Ronald H. Teufel is the son of Mrs. Dupes and the stepson of Mr. Dupes. Teufel was the driver of a truck which was owned by Dupes but leased to Ace-Doran. On October 15, 1973, Teufel was seriously injured while in the course of his employment. Teufel subsequently filed two petitions for workmen's compensation which were consolidated for hearing. One petition alleged that Dupes was his employer, and the other alleged that Ace-Doran was his employer. The parties agreed that Teufel was injured in the course of employ-

ment and was totally disabled as a result. The referee held that Dupes was Teufel's employer at the time of the accident and awarded benefits accordingly. Dupes appealed to the Board which held that Ace-Doran was Teufel's employer and reversed. Ace-Doran now appeals to this Court arguing that the Board erred, as a matter of law, by reversing the referee.

The question of whether a party is an employer of a workmen's compensation claimant is a question of law based upon findings of fact. *Barnold Shoes, Inc. v. Workmen's Compensation Appeal Board,* 10 Pa. Commonwealth Ct. 73, 308 A.2d 189 (1973). Part of our scope of review is to determine if the Board has committed an error of law. *Commercial Laundry, Inc. v. Workmen's Compensation Appeal Board,* 17 Pa. Commonwealth Ct. 297, 331 A.2d 230 (1975).

Teufel, acting on behalf of Dupes, negotiated the terms of the lease between Dupes and Ace-Doran. The lease was admitted into evidence and it bears the signatures of John Dupes, Teufel, and a representative of Ace-Doran. The lease provided that Dupes would lease a truck to Ace-Doran for Ace-Doran's "exclusive possession, control, use and responsibility," and the Dupes would "furnish a competent, reliable and physically fit operator or driver. . . ." Dupes agreed in the lease to "pay all costs of operation" including "payments for injury or damages" to the driver and "workmen's compensation, unemployment insurance, social security or other similar taxes, insurance or benefits" on the driver. Ace-Doran agreed to pay Dupes 70% to 75% of the gross payment charged for delivery of freight, and Dupes agreed to make all "payroll, tax or other deductions required by any applicable law or regulation. . . ." The lease made no provision for compensation to the driver. Teufel was paid by Dupes on a percentage basis pursuant to an agreement between himself and Dupes.

Selection of trips was made by Teufel in the following manner: When Teufel wanted to work, he would call the nearest Ace-Doran terminal and report his availability for service. He would be offered as many loads as were then available for transportation through that terminal. Teufel could elect to take any of the loads which were available or elect to take none of those loads if he was not satisfied with the trip, the merchandise to be transported, or the destination. Some loads included specific instructions by the customer that a load had to be picked up or delivered at a particular time. These customer requirements were factors which the owner or operator could consider in deciding whether to accept or reject an offered load. Ace-Doran did not control the selection of routes or manner of accomplishing the movement of the freight, although where special hauling permits were required or a particular route was known to be dangerous, some special instructions might be issued. Ace-Doran exercised no control over Teufel as to whether he worked, how often he worked, what trips he selected, or what terminal or terminals he called when looking for available loads. In all these matters, Teufel was free to make his own selection. In all these matters, Dupes, as owner of the truck, had the right to specify to his driver, Teufel, what decisions should be made in order to produce the most revenue. Dupes was satisfied to have Teufel make all these decisions on his behalf. The following excerpt from the testimony of Teufel, on direct examination by Dupes, summarizes the relationship between Dupes and Teufel.

"Q. Did you ever receive any instructions from Mr. Dupes as to what loads to accept and what routes to take?

"A. No, never. I may, if I can explain just a little bit here. He had little knowledge. *He could have had control over me,* let's put it this way, because he owned the truck, but he had little actual knowledge of

what routes to take and so forth, so it was entirely up to me." (Emphasis added.)

The Board found that Ace-Doran "had the right to control and did in fact exercise control" over Teufel's work activities. This finding is only partially correct and only partially relevant. The crucial test in a case such as this is whether the lessee trucking company assumes the right of control with regard not only to the work to be done by the truck driver, but also to the manner of performing it. *See Hamler v. Waldron,* 445 Pa. 262, 284 A.2d 725 (1971). Ace-Doran did not exercise control over the manner in which Teufel worked.

Our Supreme Court, in *Mature v. Angelo,* 373 Pa. 593, 596-597, 97 A.2d 59, 60-61 (1953), set forth the following principles concerning loaned employes:

"A servant is the employe of the person who has the *right* of controlling the manner of his performance of the work, irrespective of whether he actually *exercises* that control or not. . . .

"Where one is engaged in the business of renting out trucks, automobiles, cranes, or any other machine, and furnishes a driver or operator as part of the hiring, there is a factual presumption that the operator remains in the employ of his original master, and, unless that presumption is overcome by evidence that the borrowing employer *in fact* assumes control of the employe's *manner of performing the work,* the servant remains in the service of his original employer . . . .

"Facts which indicate that the servant remains the employe of his original master are, among others, that the latter has the right to select the employe to be loaned and to discharge him at any time and send another in his place, that the lent servant has the skill of a technician or specialist which the performance of the work requires, that the hiring is at a rate

by the day or hour, and that the employment is for no definite period . . . .

"The mere fact that the person to whom a machine and its operator are supplied points out to the operator from time to time the work to be done and the place where it is to be performed does not in any way militate against the continuance of the relation of employe and employer between the operator and his 'original master . . . (citations omitted)." (Emphasis in original.)

Application of these principles to the facts of the instant case leads inevitably to the conclusion that Teufel was employed by Dupes. Prior cases dealing with similar fact situations have held that, in cases such as this, a truck driver does not become the employe of the lessee trucking company. *Walton v. Harold M. Kelly, Inc.*, 6 Pa. Commonwealth Ct. 236, 293 A.2d 627 (1972) ; *J. Miller Co. v. Mixter*, 2 Pa. Commonwealth Ct. 229, 277 A.2d 867 (1971) ; *Walton v. Harold M. Kelly, Inc.*, 218 Pa. Superior Ct. 28, 269 A.2d 347 (1970).

Dupes argues that this case is similar to *Workmen's Compensation Appeal Board v. Navajo Freight Lines, Inc.*, 19 Pa. Commonwealth Ct. 25, 338 A.2d 766 (1975), where we held that a truck driver was an employe of a lessee trucking company at the time he was injured. *Navajo*, however, involved an unusual fact situation, which we held was distinguishable from *Walton, supra,* and *Mixter, supra,* and which we believe is equally distinguishable from the instant case.

In summary, we hold that the Board erred as a matter of law by concluding that Ace-Doran was Teufel's employer. The referee correctly decided that Dupes was Teufel's employer. We therefore

ORDER

AND NOW this 15th day of March, 1976, John F. Dupes, t/a Dupes' Garage, and/or his insurance carrier,

are ordered to pay to Ronald H. Teufel, compensation for total disability at the rate of $100.00 per week, beginning October 15, 1973, and continuing within the meaning and limitations of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1 et seq. Interest at the rate of ten percent (10%) per annum is payable in accordance with the Act. It is further ordered that John F. Dupes, t/a Dupes' Garage, and/or his insurance carrier, pay the following medical and hospital bills incurred by Teufel as a result of his injury:

| | | |
|---|---|---:|
| 1. | Walker Feilback Funeral Home (Ambulance) .....................$ | 30.00 |
| 2. | Robert M. Glad, M.D. ................ | 105.00 |
| 3. | St. Vincent's Hospital, Toledo, Ohio ...... | 9,817.14 |
| 4. | Toledo Urelogy ...................... | 75.00 |
| 5. | Fisher Titus Memorial Hospital ......... | 34.80 |
| 6. | Kelleher, Sullivan, Barbak & Dean, Phys. . | 814.80 |
| 7. | C.A.P.M.A.S. Medical Corporation ...... | 48.00 |
| 8. | Drs. Harding, Dominquez & Busse ...... | 198.55 |
| 9. | Harold C. Shultz, D.O. ................ | 15.00 |
| 10. | New Cumberland Vol. Fireman's Relief Assn.—Ambulance ............... | 16.20 |
| 11. | City of Norwalk, Ambulance Service .... | 101.00 |
| 12. | C.A.P.M.A.S. Medical Corporation ....... | 12.00 |
| 13. | Hershey Medical Center (Medical Records) ........................ | 42.00 |
| 14. | Dr. Graham (Medical Report) .......... | 25.00 |
| 15. | Jobst (Pressure vests, gloves, neck support, alteration) ....................... | 246.25 |
| 16. | Drugs ............................. | 237.05 |
| 17. | Hershey Medical Center to 7/3/74 ...... | 26,368.48 |
| | Total Medical Bills To Date — | $38,186.27 |