Martin Trucking Company and Continental Insurance Company, Petitioners v. Workmen's Compensation Appeal Board, and Walter Andrushenko and Clark Searfoss, Respondents.

368

Argued March 10, 1977, before Judges CRUMLISH, JR., KRAMER and ROGERS, sitting as a panel of three.

*Raymond F. Keisling,* with him *Will & Keisling,* for appellant.

*Carmen F. Lamancusa,* with him *Caiazza & Lamancusa,* and *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE CRUMLISH, JR., May 31, 1977:

This is an appeal by Martin Trucking Company (Martin) from a determination by the Workmen's Compensation Appeal Board (Board) that Martin was the employer of Walter Andrushenko (Claimant) and,

as such, was responsible for the payment of benefits due him under The Pennsylvania Workmen's Compensation Act[1] as a result of his being injured on the job and totally and permanently disabled. We affirm.

The issue in this case is one which we have confronted before; namely, when the owner of a truck leases it to another and supplies the driver, is the driver an employe of the lessor or of the lessee?

On August 2, 1971, Claimant fell from atop a coal truck and broke his right leg while checking the load. He was hospitalized and the leg was later amputated. The truck was owned by Clark Searfoss (Searfoss) and leased to Martin. Martin, in turn, was under contract with Bessemer Cement Company (Bessemer) to haul coal from various mines to Bessemer's plant. Bessemer would instruct Martin from which mines coal was to be picked up the following day; Martin then would assign one of the truck drivers to make a given pickup. The next day, the drivers, who usually kept their trucks at home, would drive directly to their assigned destinations. Martin, which held licenses from the Public Utilities Commission and the Interstate Commerce Commission, specified the routes over which the trucks were to travel and posted bond for those routes. Throughout his employment, Claimant received neither orders nor destination or route information from Searfoss.

Martin had the right to approve all drivers and, in conformity with Interstate Commerce Commission regulations, required a physical examination and a certification of fitness before giving its approval. Martin reimbursed Searfoss on a tonnage basis, and Searfoss then paid Claimant out of those funds at a rate arrived at by agreement between Claimant and Searfoss. No money passed directly from Martin to Claimant, but Martin deducted from its payment to Searfoss

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1 et seq.

Claimant's Social Security, pension, union dues, and the cost of life insurance and public liability and property damage insurance policies, which had been subscribed by Martin and which named Martin as the employer and Claimant as an employe.

The referee found that all instructions and orders concerning Claimant's employment came from Martin and that Searfoss' only connection with Claimant was that he paid his wages; from this, he concluded that Martin was Claimant's employer.

It is indisputable that our review of a Board decision is limited to a determination of whether constitutional rights were violated, an error of law was committed, or necessary findings of fact are unsupported by substantial evidence. *Phillips v. North American Coal Co.*, 27 Pa. Commonwealth Ct. 103, 365 A.2d 453 (1976). The question of whether an employer-employe relationship exists is one of law, based upon findings of fact. *Workmen's Compensation Appeal Board v. Dupes*, 24 Pa. Commonwealth Ct. 47, 353 A.2d 908 (1976). There is no set formula for determining the existence of an employer-employe relationship; each case must be determined on the factual matrix. *J. Miller Co. v. Mixter*, 2 Pa. Commonwealth Ct. 229, 277 A.2d 867 (1971). It is clear, however, that the key element is control of the manner of performance of the employment duties. We said in *Dupes, supra,* that ''[t]he crucial test in a case such as this is whether the lessee trucking company assumes the right of control with regard not only to the work to be done by the truck driver, but also to the manner of performing it.'' 24 Pa. Commonwealth Ct. at 51, 353 A.2d at 910. In our opinion, we cited *Mature v. Angelo,* 373 Pa. 593, 97 A.2d 59 (1953), for the proposition that:

> A servant is the employe of the person who has the right of controlling the manner of his performance of the work, irrespective of whether he actually exercises that control or not. . . .

> Where one is engaged in the business of renting out trucks, automobiles, cranes, or any other machine, and furnishes a driver or operator as part of the hiring, there is a factual presumption that the operator remains in the employ of his original master, and, unless that presumption is overcome by evidence that the borrowing employer in fact assumes control of the employe's manner of performing the work, the servant remains in the service of his original employer. . . .

*Mature, supra,* 373 Pa. at 596, 97 A.2d at 60.

Our careful study of the entire record leads us to conclude that the Board and the referee correctly ruled that it was Martin, not Searfoss, who controlled Claimant's manner of performance. The testimony establishes that, from the moment the lease agreement went into effect, Searfoss stepped into the background, functioning only as a conduit through which funds passed from Martin to Claimant, and that instructions on day to day operations came directly from Martin. The case is distinguishable from *Dupes, supra,* wherein we held that the truck driver was the employe of the lessor, not the lessee. There, the lessee did not decide which routes would be followed, whether and how often the driver worked, which trips he selected, or which terminals he called when looking for available loads. We stated, "In all these matters Dupes, as owner of the truck, had the right to specify to his driver, Teufel, what decisions should be made to produce the most revenue." Therefore, in that case, the right to control the manner of the day to day operations of the driver remained in the lessor. Here, while the case is a close one, we are convinced that the evidence discloses "that the borrowing employer in fact assume[d] control of the employe's *manner of performing the work." Mature, supra.* (Emphasis added.)

Accordingly, we

ORDER

AND Now, this 31st day of May, 1977, the decision of the Workmen's Compensation Appeal Board is hereby affirmed. The defendant, Martin Trucking Company and/or its insurance carrier, Continental Insurance Company, shall pay to Claimant, Walter Andrushenko, the sum of $60.00 per week from August 2, 1971, for so long as Claimant is totally and permanently disabled. It is further ordered that said defendant shall pay the following medical bills:

| | |
|---|---:|
| Dr. Acquaviva | $ 2,175.00 |
| St. Francis Hospital From 11/26/71 to 1/25/72 | 3,772.70 |
| St. Francis Hospital From 8/2/71 to 10/15/71 | 6,036.35 |
| St. Francis Hospital From 4/18/72 to 5/3/72 | 1,243.76 |
| Total | $13,227.81 |