North Penn Transfer, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board, Sandra Michalovicz, w/o Steven et al., Respondents.

Argued June 1, 1981, before Judges MENCER, BLATT and MACPHAIL, sitting as a panel of three.

*Lowell A. Reed, Jr., Rawle & Henderson,* for petitioner.

*Robert L. Felice,* with him *John F. McElvenny* and *Joel Cardis, Goldberg, Felice & Isicrate Associates, LTD.,* for respondents.

OPINION BY JUDGE MACPHAIL, August 28, 1981:

North Penn Transfer, Inc. (North Penn) appeals from an order of the Workmen's Compensation Appeal Board which affirmed a referee's award of benefits to Sandra Michalovicz (Claimant), widow of

Steven Michalovicz, and their two children. We affirm.

The origin of this case dates back to December 27, 1974 when Steven Michalovicz (Decedent) was involved in a fatal single vehicle accident near Syracuse, New York. Claimant subsequently filed three fatal claim petitions naming three defendants. The first petition was filed against North Penn, lessee of the tractor-trailer which the Decedent was driving at the time of the accident. The second petition named Charles and Robert Huber, t/a Huber Brothers Trucking Co. (Huber Brothers) as defendant. Huber Brothers owned the truck which Decedent was driving at the time of the accident. Finally, a third petition was filed against Edward Schaub and Paul Pries, individually and t/a S. & P. Transportation, Inc. (S. & P. Transportation), a separate corporation which operated a special commodities division for North Penn thereby exercising an unused portion of North Penn's Interstate Commerce Commission (I.C.C.) certificate.

The referee conducted several consolidated hearings and, based on the record thereby established, concluded that Decedent had died while in the course of his employment with North Penn. North Penn appealed the referee's decision to the Board which affirmed. The instant appeal followed.

Two issues have been raised for our consideration: 1) whether the Board and referee erred in concluding that Claimant proved the existence of an employer-employee relationship between the Decedent and North Penn and 2) whether the referee and Board erred in concluding that an agency relationship existed between North Penn and S. & P. Transportation.

Claimant, of course, had the burden of proving that at the time of Decedent's death, an employer-employee relationship existed. *Workmen's Compensation Appeal Board v. Phillips*, 29 Pa. Commonwealth

Ct. 613, 372 A.2d 63 (1977). The issue of whether a particular party was the employer of the Decedent is a question of law based upon findings of fact. *Workmen's Compensation Appeal Board v. Dupes,* 24 Pa. Commonwealth Ct. 47, 353 A.2d 908 (1976). Where, as here, the party with the burden of proof has prevailed before the referee and the Board has taken no additional evidence our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was made or a necessary finding of fact was unsupported by substantial evidence. *Interstate Truck Service, Inc. v. Workmen's Compensation Appeal Board,* 42 Pa. Commonwealth Ct. 22, 400 A.2d 225 (1979).

The existence of an employer-employee relationship must be determined on a case by case basis. While there is no standard approach in cases of this nature it is clear that the key element is whether the alleged employer had the right to control the work to be done and the manner in which the work is performed. *Martin Trucking Co. v. Workmen's Compensation Appeal Board,* 30 Pa. Commonwealth Ct. 367, 373 A.2d 1168 (1977). In the instant case, in order to resolve the issue of whether North Penn was correctly found to be Decedent's employer it is important to understand the business relationship among the three named defendants.

North Penn is a general freight carrier which in 1974 operated, for the most part, between New York and Washington, D.C. North Penn possessed an I.C.C. Certificate which authorized that operation as well as the movement of special commodities throughout a ten-state area. Since North Penn did not make full use of the latter portion of its certificate, it agreed in August, 1974 that S. & P. Transportation would exercise the special commodities portion of the certificate. Although the agreement reached was not reduced to

writing, the record establishes that S. & P. Transportation used North Penn's name in the operation of its business; that S. & P. Transportation leased tractor-trailers in North Penn's name; that North Penn knew that agents of S. & P. Transportation also identified themselves as "North Penn"; and that S. & P. Transportation administered drivers tests in North Penn's name to potential truck drivers.

In the instant case, Huber Brothers leased the tractor-trailer in which Decedent was killed to North Penn. The lease was a thirty-day renewable lease, was executed by Paul Pries as North Penn's agent and was in effect at the time of Decedent's death. The truck carried the identification placard "Leased to North Penn Transfer, Inc." Based on substantial evidence in the record, the referee found that Paul Pries had approved Decedent as a driver after conducting a road test and written examination on October 1, 1974.[1] Certifications of road test and written examinations were issued to Decedent carrying a North Penn stamp. During one of the hearings in this case Edward Schaub of S. & P. Transportation testified as follows:

Q. Were you ever authorized by North Penn to hold yourself out to the business community as North Penn?

A. Yes, Sir.

. . . .

Q. . . . Were you given Carte [sic] blanche authority to represent yourself as North Penn Transfer?

A. Yes, Sir.

We think it is clear, based on this testimony which was not refuted by North Penn, that the referee and Board correctly found that an agency relationship

---

[1] The examinations were conducted pursuant to an application for employment filed by Decedent.

existed between North Penn, as principal, and S. & P. Transportation, as agent. It appears from the record that S. & P. Transportation had the express authority to operate a special commodities division utilizing North Penn's I.C.C. certificate. Based on that express authority it is clear that implied authority can be found for the specific business activities discussed thus far. With regard to the creation by S. & P. Transportation, as agent, of and employer-employee relationship, we note that "[a]n agent's authority to employ others may be derived from authority expressly given, from implied authority, or from a course of dealing with others within the knowledge of the principal and acquiesced in by him. . . . [A]n agent, regardless of his instructions, may be clothed with apparent authority to make contracts of employment on behalf of his principal. . . ." 1 P.L.E. *Agency* §106 (1957). "Apparent authority" has been defined as "that authority which, although not actually granted, the principal (1) knowingly permits the agent to exercise or (2) holds him out as possessing." *Jennings v. Pittsburgh Mercantile Co.*, 414 Pa. 641, 644, 202 A.2d 51, 54 (1964). "Implied authority" is the authority to do "all that is proper, usual and necessary" to exercise express authority. 1 P.L.E. *Agency* §94 (1957). For the reasons which follow, we conclude that S. & P. Transportation had both implied and apparent authority to create an employer-employee relationship between North Penn and the Decedent.

Except for the agency relationship which we have found exists between North Penn and S. & P. Transportation, this case is similar to other cases in which a truck owner leases his truck to another and supplies the driver. The factors to be considered in determining whether the lessor or the lessee is the driver's employer include: 1) which party possesses the right of control with regard to the work and the

manner of performing it, *regardless of whether that right is exercised* and 2) the factual presumption that the driver remains in the employ of his original master. This presumption can be rebutted by evidence that the lessee has in fact assumed control of the employee's manner of performing his work *Mature v. Angelo,* 373 Pa. 593, 97 A.2d 59 (1953).

The referee made the following pertinent findings of fact based on substantial evidence in the record:

13. Steven Michalovicz drove exclusively vehicles leased to North Penn Transfer, Inc. from the time he commenced employment in October of 1974 until his death on December 27, 1974.

. . . .

17. Edward Schaub called the deceased on December 24 or December 25, 1974 and directed him to pick up a load of steel on December 26, 1974 at Mac Fab in Bristol, Pennsylvania and to deliver it to Buffalo, New York.

. . . .

19. Paul Pries and Edward Schaub did direct the deceased to keep a log book in the name of the North Penn Transfer, Inc., which he did keep. . . .

. . . .

25. The Decedent and other drivers were contacted by Paul Pries and Edward Schaub as agents who were running a special commodity division for North Penn Transfer, Inc. and not by [Huber Brothers].

The aforementioned Finding of Fact applies to the times when jobs were to be assigned and when designated routes were to be taken and when loads were to be picked up and where they were to be taken.

26. Paul Pries and Edward Schaub . . . could terminate a lease or refuse to renew the lease of a truck if the owner would not fire a driver at their request. They had complete control over who would drive the truck that was leased to North Penn Transfer, Inc., through S. & P. Transportation, Inc.

. . . .

30. Federal deductions and payments directly to the Decedent were made by the Huber Brothers. Payment for work done by the driver was not made by the owner of the truck until said owner received settlement money from S. & P. Transportation, Inc. S. & P. Transportation, Inc., made payment to the owners after receiving settlement on the freight bills from North Penn Transfer, Inc.

From these findings we have no doubt that S. & P. Transportation, acting as an agent with implied and apparent authority, had the right to control Decedent's work. This case is quite similar on its facts to *Martin Trucking Co.* in which the sole role of the lessor truck owner was to serve as a conduit for payment of funds from the lessee, Martin, to the claimant. Martin gave instructions to claimant on destination and route information and had the right to approve all drivers. We concluded in that case that Martin was the claimant's employer. Likewise, we conclude that Huber Brothers served primarily as a conduit through which Decedent was paid. The record discloses that Huber Brothers seldom knew where their trucks were and certainly did not know anything about the Decedent's fatal trip to Buffalo. The mere fact that Huber Brothers paid wages to the Decedent pursuant to the terms of the lease agreement does not in and of itself establish that Huber Brothers was the employer. *Workmen's Compensation Appeal Board v. American*

*Mutual Liability Insurance Co.,* 19 Pa. Commonwealth Ct. 502, 339 A.2d 183 (1975). Furthermore, we believe that the actions of S. & P. Transportation which created the employment relationship were "necessary and usual" actions aimed at carrying out the express authority granted by North Penn to operate a special commodities division. We, therefore, conclude that S. & P. Transportation had implied authority to create the employment relationship with Decedent and that North Penn, as principal, was bound thereby. We also find that S. & P. Transportation was clothed with apparent authority to create the employment relationship.[2]

We note that our conclusion that North Penn was the employer of the Decedent is not based on the written terms of the lease agreement, which vested full control, possession and management of the tractor-trailer in the lessee, North Penn. Rather, our conclusion is based upon the actual practice of S. & P. Transportation acting as North Penn's agent in its dealings with the Decedent. *Walton v. H. M. Kelly, Inc.,* 6 Pa. Commonwealth Ct. 236, 293 A.2d 627 (1972).

Order affirmed.

ORDER

AND Now, this 28th day of August, 1981, the order of the Workmen's Compensation Appeal Board, dated May 2, 1980, affirming the referee's decision granting compensation benefits to Sandra Michalovicz, Eric Michalovicz and Jeffery Michalovicz, dependents of Steven Michalovicz. It is hereby ordered that judg-

---

[2] The broad scope of that apparent authority is demonstrated by the fact that it was not until the second hearing in this case that it became clear that S. & P. Transportation was a corporate entity separate from North Penn. Both Huber Brothers and Claimant testified that to their knowledge Ed Schaub and Paul Pries were employees of North Penn.

ment be entered in favor of said dependents and against North Penn Transfer, Inc. and Seaboard Fire and Marine Insurance Company to pay compensation benefits to said dependents at the rate of $106.00 per week from December 27, 1974 and continuing into the future subject to the terms and conditions of The Pennsylvania Workmen's Compensation Act, *as amended.*

All deferred payments of compensation shall bear interest at the rate of 10 percent. North Penn Transfer, Inc. and Seaboard Fire and Marine Insurance Company are also directed to pay funeral expenses in the amount of $750.00.

Robert L. Felice, counsel for Sandra Michalovicz, is entitled to twenty percent of the entire recovery to be deducted from the compensation benefits due.

---

AMENDED ORDER

AND Now, this 1st day of September, 1981, it having been brought to our attention that in the fifth line of our Order in this matter of August 28, 1981, the words "is affirmed" were inadvertently omitted, it is ordered that our said order shall be and it is hereby amended to affect said correction and so that it shall be read as follows:

AND Now, this 28th day of August, 1981, the order of the Workmen's Compensation Appeal Board, dated May 2, 1980, affirming the referee's decision granting Compensation benefits to Sandra Michalovicz, Eric Michalovicz and Jeffery Michalovicz, dependents of Steven Michalovicz is affirmed. It is hereby ordered that judgment be entered in favor of said dependents and against North Penn Transfer, Inc. and Seaboard Fire and Marine Insurance

Company to pay compensation benefits to said dependents at the rate of $106.00 per week from December 27, 1974 and continuing into the future subject to the terms and conditions of The Pennsylvania Workmen's Compensation Act, *as amended.*

All deferred payments of compensation shall bear interest at the rate of 10 percent. North Penn Transfer, Inc. and Seaboard Fire and Marine Insurance Company are also directed to pay funeral expenses in the amount of $750.00.

Robert L. Felice, counsel for Sandra Michalovicz, is entitled to twenty percent of the entire recovery to be deducted from the compensation benefits due.