524 A.2d 966

**GENIE TRUCKING LINE, INC., Appellant,**

v.

**AMERICAN HOME ASSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 18, 1987.

Filed April 24, 1987.

Petition for Allowance of Appeal
Denied Aug. 26, 1987.

James D. Flower, Jr., Carlisle, for appellant.

Kenneth F. DeMarco, Philadelphia, for appellee.

Before WIEAND, OLSZEWSKI and TAMILIA, JJ.

WIEAND, Judge:

The issue in this appeal is the correct computation of premiums owed by Genie Trucking Lines, Inc. (Genie) for workers' compensation coverage provided by a policy of insurance issued by American Home Assurance Company (American Home). Genie contended that it had overpaid the premiums by $7,506.09 and commenced an action to recover the same. American Home contended that the premiums had been underpaid by $17,764.00 and counterclaimed for that amount. After trial without jury, the court found that Genie was indebted to American Home in the amount of $17,764.00 and, following denial of Genie's post-trial motion, judgment was entered in favor of American Home for that amount. Genie appealed. We affirm.

G. Kenneth Bishop was president and one of three stockholders of Genie. Shortly after becoming president in 1981,

Bishop requested the issuance of a policy of workers' compensation insurance from James E. Bankes, a member of the Rollins-Burdick-Hunter Agency. Bishop told Bankes that Genie regularly utilized the services of trucking contractors whose trucks were driven by drivers employed by the trucking contractors, and that he wanted a policy of insurance which did not provide coverage for the contractors or their drivers. Bankes, despite diligent efforts, was unable to find an insurance company willing to issue workers' compensation coverage without charging a premium because of the exposure created by potential claims on behalf of the trucking contractors and their drivers. Bankes ultimately obtained a policy from American Home, for which Genie was billed $8,776.00.[1] This premium was determined by including trucking contractors and their drivers in the premium rate base. It was paid by Genie.

Thereafter, an audit was conducted to verify the number of persons covered, together with their remuneration, so that the precise amount of the premium could be determined. After the audit had been completed, Bishop became displeased because the contractors and their drivers had been included in the premium rate base. Bishop requested another audit and displayed to the auditor the lease agreements with trucking contractors. He was thus able to persuade the auditor that the trucking contractors were independent contractors and that their drivers were not employees of Genie. In reliance thereon, Genie contended that it had overpaid the correct premium ($1,269.91) by $7,506.09. American Home denied that a refund was owed. It notified Genie that the premium had initially been underestimated and that the correct premium was $26,540.00. Based on this computation, Genie allegedly owed a balance of $17,764.00.

The dispute at trial was whether the trucking contractors and their drivers were to be included in the premium rate base. According to the language of the policy, coverage was provided for "clerical employees and truckmen," and the premium was to be determined according to whether the

1. The term of the policy was for one year, commencing July 4, 1981.

truck drivers "may render the company liable under the policy for injury to or death of such person in accordance with the workmen's compensation law."[2] The trial court found that potential liability did exist with respect to the drivers of the trucking contractors and that those drivers, therefore, were properly included in the premium rate base.

Genie argues that its contracts with trucking contractors contain terms which make the truckers independent contractors. Therefore, the argument continues, the drivers employed by the trucking contractors cannot be deemed employees of Genie and cannot present valid claims under the Workers' Compensation Law.

In *Mature v. Angelo,* 373 Pa. 593, 97 A.2d 59 (1953), the Supreme Court stated:

> Where one is engaged in the business of renting out trucks, automobiles, cranes, or any other machine, and furnishes a driver or operator as part of the hiring, there is a factual presumption that the operator remains in the employ of his original master, and, unless that presumption is overcome by evidence that the borrowing employer **in fact** assumes control of the employe's **manner of performing the work,** the servant remains in the service of his original employer....

> Facts which indicate that the servant remains the employe of his original master are, among others, that the

---

**2.** Specifically, the policy purchased by Genie provided that the personnel to be covered in Pennsylvania included clerical office employees and "truckmen" and that the personnel to be covered in Alabama included clerical office employees and "truckmen NOC-all employees and drivers." The policy further provided that the premium was to be determined by remuneration and contained the following provision:

> When used as a premium basis, "remuneration" means the entire remuneration ... earned during the policy period by (a) all executive officers and other employees of the insured engaged in operations covered by this policy, and (b) any other person performing work which may render the company liable under this policy for injury to or death of such person in accordance with the workmen's compensation law. "Remuneration" shall not include the remuneration of any person within division (b) foregoing if the insured maintains evidence satisfactory to the company that the payment of compensation and other benefits under such law to such person is secured by other valid and collectible insurance....

latter has the right to select the employe to be loaned and to discharge him at any time and send another in his place, that the lent servant has the skill of a technician or specialist which the performance of the work requires, that the hiring is at a rate by the day or hour, and that the employment is for no definite period....

*Id.*, 373 Pa. at 596–597, 97 A.2d at 61. See: *Patterson v. Workmen's Compensation Appeal Board*, 86 Pa.Cmwlth. 608, 612, 485 A.2d 886, 889 (1985); *Lego v. Workmen's Compensation Appeal Board*, 66 Pa.Cmwlth. 593, 596, 445 A.2d 1324, 1325 (1982); *Martin Trucking Co. v. Workmen's Compensation Appeal Board*, 30 Pa.Cmwlth. 367, 371, 373 A.2d 1168, 1169 (1977).

The relevant criteria for distinguishing between an employer and independent contractor were enumerated by the Commonwealth Court in *J. Miller Co. v. Mixter*, 2 Pa. Cmwlth. 229, 277 A.2d 867 (1971), as follows:

The courts have not formulated a hard and fast definition for the determination of whether any given relationship is one of independent contractor or that of employer-employee. They have, however, set forth indicia of such relationship to be used as guides in making such a determination, some of which are: Control of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether work is a part of regular business of the employer, and also the right of employer to terminate the employment at any time.... These indicia are not to be considered as circumstantial in nature and whether some or all of them exist in any given situation is not absolutely controlling as to the outcome; each case must be determined on its own facts.

*Id.* at 232, 277 A.2d at 869 (citations omitted).

■ Genie contends that the agreements with the trucking contractors provide expressly that the truckers shall

have control over the operation of a leased vehicle and the person operating the same. However, the terms of the lease are but one factor to be considered, and each case must be decided on its own facts. If Genie were in fact to exercise control over the driver of a truck, according to the decided cases, the provisions of the agreement of lease for a truck would not bar a finding of the existence of an employer-employee relationship. Cf. *Patterson v. Workmen's Compensation Appeal Board, supra* 86 Pa.Cmwlth. at 614, 485 A.2d at 889 (despite provision in lease that owner/lessor relinquished all control over leased vehicle to carrier/lessee, court found that driver was employee of lessor and not lessee because, in fact, control had not been transferred). This Court cannot, as Genie would have us do, determine solely from the provisions of Genie's standard lease, that none of the trucking contractors or their drivers could assert a successful claim against it for worker's compensation benefits.

■ The evidence produced at trial indicated that despite the provisions of the lease, Genie required contractors and drivers to complete forms pertaining to their driving ability and former experience and could accept or reject them on the basis of this information. Genie also tested drivers and was able to terminate a driver's employment for enumerated reasons. Moreover, drivers were not allowed to drive for another carrier without Genie's prior approval and were required to carry documents identifying Genie as the carrier. Occasionally, Genie advanced funds to drivers to cover trip expenses, and on every trip, Genie required the drivers to report to it. The vehicles leased by Genie carried permanently affixed decals bearing Genie's name.[3] Finally, there was no evidence that the employees of the trucking contractors had been covered by other valid workers' compensation insurance.

**3.** The fact that many of these requirements were mandated by state and federal law would not operate to defeat a finding that an employer/employee relationship existed for workers' compensation purposes. See: *Rugh v. Keystone-Lawrence Transfer & Storage Co.,* 197 Pa.Super. 526, 179 A.2d 242 (1962).

The trial court found from the evidence that a claim for workers' compensation benefits by a driver was a distinct possibility and that the trucking contractors and their drivers, therefore, were properly to be included in determining the amount of the premiums to be paid for coverage. That an employer-employee relationship between Genie and its truckers could be found is supported by the decided cases. See and compare: *North East Express, Inc. v. Workmen's Compensation Appeal Board,* 77 Pa.Cmwlth. 255, 465 A.2d 724 (1983) (court found that claimant-driver was employee of carrier-lessee despite fact that lessee did not specify routes to be taken in hauling loads where control of driver was exercised in other ways); *Lego v. Workmen's Compensation Appeal Board, supra* (court upheld referee's finding that decedent-driver had been employee of carrier-lessee where vehicle had borne decal logo of lessee, lease had given lessee right to control vehicle, lessee had right to specify routes taken by decedent and decedent had been required to report to lessee during trip); *North Penn Transfer, Inc. v. Workmen's Compensation Appeal Board,* 61 Pa.Cmwlth. 469, 434 A.2d 228 (1981) (court concluded that decedent-driver had been employee of lessee where decedent had exclusively driven vehicles leased to lessee, decedent had been required to keep log book in lessee's name, lessee's agent had contacted decedent when jobs were to be assigned and had designated the routes to be taken, lessee could terminate lease if lessor did not fire a driver at lessee's request and lessee had control over who could drive the trucks leased to it). In view of the decided cases, we do not perceive error in the trial court's determination that employees of the trucking contractors were potential workers' compensation claimants.

■ Genie contends further that the trial court erred by receiving parol evidence to assist it in determining the meaning of the policy. It contends that the court should have made its determination solely on the basis of the provisions contained in the written policy, which disclosed

the intent of the parties and the proper means for calculating the premium due.

It is well settled in Pennsylvania law that in the absence of fraud, accident or mistake, parol evidence as to preliminary negotiations or oral agreements is not admissible in evidence if it adds to, modifies, contradicts or conflicts with the written agreement between the parties. *Servomation Mathias Pa., Inc. v. Lancashire Hall, Inc.,* 442 Pa. 602, 276 A.2d 547 (1971); *Nicolella v. Palmer,* 432 Pa. 502, 248 A.2d 20 (1968); *Keyser v. Margolis,* 422 Pa. 553, 223 A.2d 13 (1966). However, it is equally well settled that this general rule does not apply where the agreement is ambiguous. In such a situation parol evidence is admissible to explain the agreement and resolve ambiguities to ascertain the meaning of the parties. *Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001 (1980 3rd Cir.); *Silver v. Gene K. Kolber Advertising, Inc.,* 518 F.Supp. 939 (E.D.Pa.1981); *In Re Fessman's Estate,* 386 Pa. 447, 126 A.2d 676 (1956); *Pavlich v. Ambrosia Coal Co.,* 441 Pa. 210, 273 A.2d 343 (1971); *Kohn v. Kohn,* 242 Pa.Super. 435, 364 A.2d 350 (1976). *Daset Mining Corp. v. Industrial Fuels Corp.,* 326 Pa.Super. 14, 29, 473 A.2d 584, 592 (1984).

In the instant case, Genie contended that the parties had not intended to provide workers' compensation coverage for trucking contractors and drivers and offered extrinsic evidence to show this to be the case. The trial court received such evidence. Conversely, American Home contended that the contractors and drivers were included in the policy under the category of "truckmen," and it, too, offered extrinsic evidence to support its interpretation of the policy. We find no error in the trial court's receiving the extrinsic evidence offered by American Home. The existence of a latent ambiguity became apparent when the coverage for "truckmen" was considered to determine whether it included trucking contractors and their drivers. A similar ambiguity became apparent when the coverage provided by the policy was made the basis for determining the amount of

the premium owed. Genie must have been aware of this, for it, too, offered evidence of extrinsic circumstances to assist the court in interpreting the policy language. The trial court did not err in receiving evidence of extrinsic circumstances from American Home as well.

Judgment affirmed.