**Eldon BAUM, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (HITCHCOCK),
Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 13, 1998.

Decided Dec. 10, 1998.

---

Joseph H. Blum, Philadelphia, for petitioner.

Gary D. Martz, York, for respondent.

Before McGINLEY and DAN PELLEGRINI, JJ., and LORD, Senior Judge.

PELLEGRINI, Judge.

Eldon Baum (Baum) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) granting Richard Hitchcock's (Claimant) petition

for compensation benefits pursuant to Sections 108 and 301(c)(1) of the Workers' Compensation Act (Act)[1] because Claimant was an employee of Baum at the time of his injury.

On February 24, 1992, Claimant, while working for Baum as a truck driver, was loading a truck with sawdust at J.F. Rohrbaugh & Co. (Rohrbaugh) when he was caught in an auger[2] and injured. In February 1995, Claimant filed a claim petition seeking compensation benefits for his injuries.[3] Baum denied his claim alleging that Claimant was not his employee and, as such, Claimant's injuries were not covered under the Act. The case proceeded to a hearing with Baum and Claimant stipulating that the only issue for the WCJ to decide was whether Claimant was an employee or an independent contractor of Baum at the time of his injury.

In support of his claim petition, Claimant testified that he began working for Baum as a truck driver in July 1991. As to the nature of his work, Claimant stated that he would use Baum's trucks to go to the Rohrbaugh plant in order to load the truck with sawdust, tarp it, and then deliver it to Baum's customers. He indicated that at the end of the delivery, he would return the truck to the Rohrbaugh plant and place it under the auger until it was filled with sawdust and ready for another delivery. Claimant testified that he was paid weekly in cash according to the number of loads picked up from the Rohrbaugh plant and delivered to Baum's customers.[4] He stated that he was responsible for paying his income taxes and that Baum had provided him with a W-4 income tax form. Claimant further stated that in April 1992, Baum gave him additional money in cash,

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 27.1 and 411.1, *added by* the Act of Oct. 17, 1972, P.L. 930, No. 223 and the Act of Dec. 6, 1972, P.L. 1627, No. 337.

2. An "auger" is defined as "a tool for boring holes in wood consisting of a shank with a crosswise handle for turning, a central tapered screw, and a pair of cutting lips." WEBSTER'S NEW COLLEGIATE DICTIONARY 115 (9th ed.1989). Claimant was using the auger to load sawdust into a truck at the time of his accident.

3. Claimant suffered "a severely fractured right ankle, broken toes in the right foot, a left ankle fracture, a laceration and puncture wound of the elbow, and various abrasions and contusions."

4. Claimant testified that he was paid $25 to $30 per load depending on where the load was to be delivered, and that he delivered, on average, two loads per day and 10 loads per week.

which he understood was to be used to pay his income taxes.[5]

Regarding his employment relationship with Baum, Claimant testified that he understood that he was an employee of Baum. He further testified that he did not do this kind of work for anyone other than Baum and that he understood himself to be the only person doing the job for Baum, except for Baum and Baum's neighbor when Claimant was unavailable. Claimant stated that:

- He did not use any of his own tools for the job;
- Baum advised him on the method of loading the trucks and where to deliver the sawdust;
- Baum alone maintained contact with Rohrbaugh concerning when a load of sawdust had to be picked up;
- Baum determined which of his customers would receive a delivery of sawdust;
- Baum decided the customer delivery routes because of his knowledge of weight restrictions on certain roads;
- Baum paid for the gas used in the trucks;
- Baum instructed him on when to gas and grease the trucks;
- Baum paid Rohrbaugh for the loads of sawdust; and
- He never took any of Baum's trucks to his home unless he was going to clean them.

Claimant testified that he understood that Baum would provide him with insurance coverage in the event of an accident.[6]

In opposition, Baum testified that although he would "help him out" at different times, Claimant was not his employee.[7] He further testified that there was no employment contract between himself and Claimant. Baum stated that he paid Claimant in cash because that was what Claimant requested of him.

He further stated that Claimant's deliveries were not consistent from week to week; some weeks Claimant would haul 10 loads, other weeks Claimant would only haul two or three loads, and sometimes Claimant would not haul anything because "it didn't suit him." Baum indicated that he paid Claimant per load depending upon where the load was delivered: if delivered to a shed on Baum's property, Claimant was paid $12 per load; if delivered to a customer, Claimant was paid $20 per load. He further indicated that he never paid Claimant $30 to haul a load of sawdust.

Regarding the job itself, Baum testified that he never instructed Claimant how to operate the trucks because Claimant had operated them for him in the past, and he also did not tell Claimant the delivery routes because Claimant knew almost every person that would receive a delivery load. He stated that he never told Claimant how to load the trucks because the workers at the Rohrbaugh plant loaded the trucks and "we have nothing to do with that," except to tarp the load. Baum indicated that if Claimant loaded the sawdust or leveled off a load, he did it on his own and not because he was instructed to do so. He testified that he never instructed Claimant to wash the trucks and that if he did, again, it was because he wanted to do so on his own. Baum also testified that although the contract for the sawdust collection was between himself and Rohrbaugh, Claimant would collect the money from customers for the deliveries he made. However, Baum admitted that if he did not want Claimant to drive for him anymore, he could have terminated him and there was nothing Claimant could do about it because he had no right to drive Baum's trucks without his permission.

Accepting Claimant's testimony as credible and finding Baum's testimony incredible, the

---

**5.** Baum testified that he did give Claimant extra money in April 1992, but did not specify that Claimant was to use the money for payment of his income taxes.

**6.** Claimant testified that he later discovered that his injuries were not covered under either Baum's or Rohrbaugh's insurance policies. To the contrary, Baum testified that he told Claim-

ant up front that he would not provide him with any insurance coverage.

**7.** Baum testified that sometimes he would call Claimant and ask him for help in making deliveries, and sometimes, if Claimant had nothing to do, he would call Baum indicating that he was available to work.

WCJ granted Claimant's petition.[8] The WCJ concluded that Claimant was an employee of Baum and not an independent contractor because:

> The work performed by [C]laimant for [Baum] took no skill and was part of the regular business of [Baum]. Claimant did not supply any tools, and the trucks used for the loading and delivery of the sawdust were provided by [Baum], and at least one of those trucks had the name of [Baum's] farm on the side of the truck. This Judge believes and finds as credible the testimony of [C]laimant that he was given instructions by defendant on how to load and deliver the sawdust, and that [Baum] had the right to control the manner in which [C]laimant performed the work. Baum had the right to terminate [C]laimant at any time. Claimant did not perform this work for anyone else.

The Board affirmed and this appeal by Baum followed.[9]

█ As before the WCJ and the Board, the sole issue on appeal is whether Claimant was an employee or an independent contractor for Baum for purposes of collecting workers' compensation benefits. To qualify for workers' compensation benefits, a claimant must demonstrate that an employment relationship existed at the time of the accident or injury and that the accident or injury was work-related. Section 301(c)(1) of the Act, 77 P.S. §411.1; *Siano by Siano v. Workmen's Compensation Appeal Board (Dileo's Restaurant, Inc.)*, 137 Pa.Cmwlth. 487, 586 A.2d 1008 (Pa.Cmwlth.1991).

█ In *Hammermill Paper Co. v. Rust Engineering Co.*, 430 Pa. 365, 243 A.2d 389 (1968), our Supreme Court identified the fol-lowing factors to be considered when deciding whether an employer-employee or owner-independent contractor relationship existed:

> [1] Control of manner of work is to be done; [2] responsibility for result only; [3] terms of agreement between the parties; [4] the nature of the work or occupation; [5] skill required for performance; [6] whether one employed is engaged in a distinct occupation or business; [7] which party supplies the tools; [8] whether payment is by the time or by the job; [9] whether work is part of the regular business of the employer[;] and [10] also the right to terminate the employment at any time.

*Id.* at 370, 243 A.2d at 392 (citations omitted). Because each case presented is fact specific, all of these factors need not be present to determine the type of relationship that exists. *J. Miller Co. v. Mixter*, 2 Pa.Cmwlth. 229, 277 A.2d 867 (Pa.Cmwlth.1971). However, the key factors which determine whether a claimant is an employee or independent contractor are: (1) whether the purported employer has the right to hire and fire the employee; (2) whether the employer has the right to direct the manner of the employee's performance of the work; and (3) whether the employer has the right to control the work to be completed. *Hunter v. Workers' Compensation Appeal Board (Jack Greenberg Co.)*, 706 A.2d 403 (Pa.Cmwlth.), *petition for allowance of appeal denied,* — Pa. —, — A.2d — (1998); *North Penn Transfer, Inc. v. Workmen's Compensation Appeal Board (Michalovicz)*, 61 Pa.Cmwlth. 469, 434 A.2d 228 (Pa.Cmwlth.1981). If the alleged employer has this right to control either the work to be done or the manner in which it is to be performed, an employer-employee rela-

---

8. The WCJ ordered Baum to pay Claimant temporary total disability compensation benefits of $227.50 per week from February 25, 1992, through the present, and continuing into the future in accordance with the provisions of the Act. Baum was also ordered to pay Claimant's medical expenses.

9. This Court's scope of review is limited to a determination of whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact were supported by substantial evidence in the record. Section 704 of the Administrative Agen-cy Law, 2 Pa.C.S. § 704; *Findley v. Workers' Compensation Appeal Board (Brooklyn Bagel, Inc.)*, 707 A.2d 1220 (Pa.Cmwlth.1998). Whether a claimant is an employee or an independent contractor is a question of law fully reviewable on appeal, *Lynch v. Workmen's Compensation Appeal Board (Connellsville Area School District)*, 123 Pa.Cmwlth. 299, 554 A.2d 159 (Pa.Cmwlth. 1989), *petition for allowance of appeal denied*, 525 Pa. 629, 578 A.2d 416 (1990), and is based upon the findings of fact by the WCJ. *Tri–Union Express v. Workmen's Compensation Appeal Board (Hickle)*, 703 A.2d 558 (Pa.Cmwlth.1997).

tionship is likely to exist. *Lynch, supra.; Douglas v. Workmen's Compensation Appeal Board (Dennis Trucking Co.)*, 40 Pa.Cmwlth. 101, 396 A.2d 882 (1979).

Baum contends that Claimant failed to establish that he was his employer because even though Claimant worked for him on a fairly regular basis, Baum only exercised control over Claimant with regard to the results of his labor — where the sawdust was to be delivered and not how it was to be accomplished. Moreover, Baum asserts that Claimant could not be his employee because Claimant could and did decline to work for him whenever he chose to do so making Claimant an independent contractor, not an employee. We disagree.

 Contrary to Baum's version of the facts, the WCJ found [10] that Baum did much more than tell Claimant where to deliver the loads of sawdust. Baum owned and maintained the trucks used by Claimant to make the pick-ups and deliveries; instructed Claimant on how to load the trucks with sawdust and the specific routes for Claimant to use during delivery; and controlled the schedule of deliveries and the mode of payment by his customers. Nothing illustrates that Claimant was an independent contractor: no special expertise was involved; Claimant worked solely for Baum; the contract for the pick-up of sawdust remained between Baum and Rohrbaugh and the contract for its delivery remained between Baum and his customers, and payment on these contracts never involved Claimant. Moreover, just because Claimant had the ability to decline work whenever he chose to do so does not mean that an employer-employee relationship did not exist, only that the relationship was one which gave Claimant flexibility in determining his work schedule. Because Baum controlled Claimant's performance of his duties and the business contracts, Claimant was Baum's employee and not an independent contractor at the time he was injured, making him eligible for

**10.** The WCJ as the ultimate fact finder has the exclusive province over issues of credibility and evidentiary weight of testimony, and is free to accept or reject, in whole or in part, the testimony of any witness. *General Electric Co. v. Work-*

compensation benefits. Accordingly the order of the Board is affirmed.

### ORDER

AND NOW, this 10th day of December, 1998, the order of the Workers' Compensation Appeal Board at No. A96–3296, dated July 10, 1998, is affirmed.

*men's Compensation Appeal Board (Valsamaki)*, 140 Pa.Cmwlth. 461, 593 A.2d 921 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991).