616 A.2d 728

**W.W. FRIEDLINE TRUCKING and Rockwood Insurance Company, Insurance Carrier, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (REYNOLDS), Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 12, 1992.

Decided Aug. 18, 1992.

Publication Ordered Oct. 21, 1992.

Thomas P. Finn, for petitioners.

Daniel W. Rullo, for respondent.

Before DOYLE and SMITH, JJ., and BARRY, Senior Judge.

DOYLE, Judge.

W.W. Friedline Trucking (Friedline) appeals an order of the Workmen's Compensation Appeal Board (Board) which affirmed a decision of the referee awarding benefits to Frederick J. Reynolds (Claimant). The issue presented to us centers not on Claimant's entitlement to benefits but on which of two employers is responsible for those benefits.

The relevant facts are as follows: On August 12, 1985, Claimant was injured while driving a truck owned by James

Conn, t/a Conn Trucking (Conn).[1]  At the time of the accident, the truck was leased by Conn to Friedline and operated under Friedline's Public Utility Commission (PUC) permit.  Claimant filed a claim petition on February 6, 1987, naming Conn as his employer.  A hearing was held on March 17, 1987 at which hearing Conn orally requested leave to join Friedline as an additional defendant for the purpose of demonstrating Friedline's status as Claimant's employer.  The motion was granted and the hearing was continued so as to provide notice to Friedline.

The continued hearing was subsequently held on March 14, 1988 at which time Conn presented to the referee a written motion to join Friedline as an additional defendant.[2]  Claimant and Conn testified at this hearing, and, at a hearing held on July 28, 1988, testimony was taken from Friedline.  By decision dated May 9, 1990 the referee awarded benefits to Claimant concluding, *inter alia,* that Friedline "maintained the authority and right to control the Claimant [at] all times relevant hereto, and therefore was the employer of Claimant at the time of his work related injury of August 12, 1985 . . ." Friedline appealed to the Board which affirmed the referee's decision.  Appeal to this Court followed.

The key issue on appeal is whether the referee erred in concluding that Friedline was Claimant's employer at the time of his injury.  The question of whether an employer-employee relationship exists is one of law, based upon findings of fact. *Martin Trucking Co. v. Workmen's Compensation Appeal Board,* 30 Pa.Commonwealth Ct. 367, 373 A.2d 1168 (1977). When an employee is furnished by one entity to another, the situation involves the borrowed servant/employee rules. *Red Line Express Co., Inc. v. Workmen's Compensation Appeal Board (Price),* 138 Pa.Commonwealth Ct. 375, 588 A.2d 90 (1991).

1.  Conn failed to provide workmen's compensation insurance as required by Section 305 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 501.

2.  Two hearings were held prior to the March 14th hearing.  On May 18, 1987 a hearing was scheduled but Friedline did not appear and on August 27, 1987 another hearing was held but Friedline appeared without counsel and had not given notice to its compensation carrier.

█ In *Mature v. Angelo*, 373 Pa. 593, 97 A.2d 59 (1953), our Supreme Court set forth seven principles to be considered in "borrowed employee" cases. These principles, as summarized in *Daily Express, Inc. v. Workmen's Compensation Appeal Board*, 46 Pa.Commonwealth Ct. 434, 436–37, 406 A.2d 600, 601–02 (1979), are as follows:

1. One who is in the general employ of one employer may be transferred to the service of another in such a manner that the employee becomes an employee of the second employer;

2. whether or not the transferred employee becomes the employee of the second employer depends on whether the first employer passes to the second employer not only the right to control the employee's work, but also his manner of performing it;

3. it is enough to establish the employer-employee relationship if the employer has the right to control the employee's manner of performance of work, regardless of whether the right is ever exercised;

4. where one is engaged in the business of renting out trucks and furnishes a driver as part of the hiring of the truck, *there is a presumption that the driver remains in the employ of his original employer until there is evidence that the second employer in fact assumed control over the employee's manner of performing his work;*

5. facts which indicate that an employee remains in the service of his original employer include the original employer's right to select the employee to be loaned and to discharge him at any time and send another in his place, the loaned employee's possession of a skill or special training required by the work for the second employer, and employment at a daily or hourly rate for no definite period;

6. *the fact that the second employer designates the work to be done and where it is to be done does not militate against the first employer-employee relationship;* and

7. when the facts are undisputed, the determination of who is the employee's employer is one of law, but when the facts

are disputed, the determination is one of fact. (Emphasis added.).

■ Thus, under the factors set forth in *Daily Express*, there is a presumption that Claimant remained an employee of Conn, unless there is evidence that Friedline assumed control over Claimant's manner of performing his work. In order to determine whether Friedline did, in fact, assume such control, we will consider the terms of the lease between Conn and Friedline, the testimony of the parties at the hearings and the effect of Conn's trucks carrying signs with the designation "W.W. Friedline."

We first consider the terms of the lease between Conn and Friedline. The lease provides that the trucks will be "under management of [Friedline] and shall be used by [Friedline] in the conduct of its business as a distributor of coal, sand, stone, etc." The lease further provides that, during the term of the lease, Conn "shall furnish, provide and himself pay for the following: oil, gasoline, tires, and repairs for the operation of said equipment and to pay all other expenses incident to such operation." The lease specifies that public liability and property damage insurance shall be carried by Conn but is silent as to which party is responsible for Worker's Compensation coverage. Other than the provision requiring Conn to pay "all other expenses" incident to the operation of the trucks, the lease does not specifically address responsibility for compensation of the drivers, but in fact, the Claimant was paid by Conn.

Since the provisions of the lease do not seem to evidence an intent that Claimant was to be an employee of Friedline, we look then to the actual conduct of the parties and whether Friedline actually had the power to control Claimant's work and manner of performance. *Red Line*.

In his testimony before the referee, Claimant himself stated that he was hired and paid by Conn and considered Conn to be his employer. He also testified that he worked for Conn before Conn leased his trucks to Friedline. He further testified that he received his instructions from Conn as to when and where to pick up a load and where to deliver it. Claimant testified that he was authorized by Conn to call Friedline

directly on occasions to obtain additional loads and that the load which he was carrying on the day of his accident was procured by means of a telephone call placed by another driver (not an employee of Conn) to Friedline. According to Claimant's testimony, Friedline never specifically ordered Claimant personally to pick up a load at a certain time and Claimant testified that the only relationship he had with Friedline was because Conn's trucks were leased to Friedline.

James Conn testified that he hired Claimant, paid Claimant twenty five percent of what the truck made *and that he considered himself to be Claimant's employer.* He further testified that if the drivers were not doing their jobs properly, he had the authority to dismiss them. Conn testified that Friedline did not have any say as to which drivers were to be used, that this was totally Conn's responsibility. In response to a hypothetical question, Conn stated that if Friedline had told him not to use a particular driver, Conn could have told that driver not to take the load. However, Conn later testified that Friedline never told him not to use a particular driver.

Conn further testified that Friedline controlled where the loads were to be picked up and dropped off but that Conn provided this information to the drivers and permitted his drivers to decide which load they wanted to haul. Conn also told his drivers when the loads were to be delivered and made sure that the drivers got to the drop off site on time. Conn testified that he gave his drivers permission to call Friedline if they wanted to haul an extra load.

Wayne Friedline testified that Conn hired the drivers and paid the drivers directly. *Friedline further testified that he considered the drivers to be Conn's employees, not his.* During his testimony, Friedline stated that he felt he had some authority over the conduct of the drivers but later stated that although he might have been concerned over the conduct of a driver, he did not believe that he had the right to suggest to Conn that a particular driver be dismissed.

Friedline testified that he would designate where the load was to be picked up and where it was to be delivered and that

he would sometimes specify the number of loads that had to be hauled on a particular day. He further testified that he did not request that certain drivers be used, or tell the drivers at what time they had to be in a particular place, or what route to take or how to load the trucks. He testified that he did not feel that he had the authority to give specific orders to Claimant or any other drivers because these drivers were not working for him.

The referee concluded that Friedline was the employer of Claimant because Friedline "maintained the right to control the drivers to the extent that W.W. Friedline could exercise the right to discipline, fire or reprimand a driver." It is clear from the testimony of Conn and Friedline, however, that such authority remained with Conn. Friedline's initial testimony, that he may have had authority to dismiss a driver, was later recanted.

Claimant argues that *North Penn Transfer, Inc. v. Workmen's Compensation Appeal Board,* 61 Pa.Commonwealth Ct. 469, 434 A.2d 228 (1981), wherein this Court concluded that the lessor of the truck and not its owner was the employer of the decedent for purposes of Workmen's Compensation, is controlling. In *North Penn,* Edward Schaub and Paul Pries, individually and t/a S. & P. Transportation, Inc. (S. & P. Transportation), operated a commodities division for North Penn Transfer Inc., using a portion of North Penn's Interstate Commerce Commission certificate. The decedent operated a truck, owned by a third party and leased to North Penn. The lease was executed by Paul Pries as agent for North Penn. The Court concluded that an agency relationship existed between North Penn, as principal, and S. & P. Transportation, as agent, and that S. & P. Transportation had both implied and apparent authority to create an employer-employee relationship between North Penn and the decedent. The Court also concluded, based on the findings of fact, that S. & P. Transportation had the right to control the decedent's work. The Court then concluded that North Penn was the employer of the decedent because S. & P. Transportation had acted as North Penn's agent in its dealings with the decedent.

Claimant's reliance on the *North Penn* case is, however, misplaced. In *North Penn,* the Court based its conclusion that S. & P. Transportation, as the agent of North Penn, exercised control over the duties of the decedent on the following facts: S. & P. Transportation designated what routes were to be taken and when loads were to be picked up; it could terminate a lease or refuse to renew the lease of a truck if the owner would not fire a driver at its request; and, it also had complete control over which driver would drive the truck. In the case before us, Conn retained the right to control the driver's work and his manner of performing it. Friedline had no such control. Friedline's authority was limited to designating the place of pick up and delivery, authority which does not militate against the presumption that Claimant remained the employee of Conn. *Daily Express.* Although drivers could call Friedline directly to obtain additional work, such occasional contacts between Friedline and the drivers do not overcome the day-to-day control exercised by Conn.

Finally, we consider whether the placement on the trucks of signs bearing the legend "W.W. Friedline" serves to rebut the presumption that Claimant remained in the employ of Conn. The presence of a party's name on a commercial vehicle raises a rebuttable presumption that the vehicle is owned by that party and that the driver of the vehicle is an employee of that party acting within the scope of his employment. *Workmen's Compensation Appeal Board v. Navajo Freight Lines, Inc.,* 19 Pa.Commonwealth Ct. 25, 338 A.2d 766 (1975).

Both Conn and Friedline acknowledge that Friedline's name was placed on Conn's trucks in order for Conn to use Friedline's PUC permit. Although signs identifying the trucks as being "leased to W.W. Friedline Trucking" could have been used, there is no evidence of record that the placement of signs stating "W.W. Friedline" created any confusion among the parties over who was the employer of Claimant. *Conn, Friedline and Claimant all stated that they believed that Claimant was the employee of Conn.* Thus, the presumption that Claimant was an employee of Friedline, raised by the

presence of Friedline's name on Conn's truck, is rebutted by the testimony of the parties. *Red Line, Shreiner Trucking Co. v. Workmen's Compensation Appeal Board (Wagner)*, 97 Pa.Commonwealth Ct. 182, 509 A.2d 1337 (1986).

Based on the testimony of the parties, we conclude that Conn retained the right to control the work and manner of performing it. We, therefore, further conclude that the referee committed an error of law in determining that Friedline was the employer of Claimant and awarding benefits to Claimant on that basis.[3] Accordingly, we reverse the order of the Board.[4]

## ORDER

NOW, August 18, 1992, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby reversed.

3. Where an employer has not supplied workmen's compensation coverage, Section 305 of the Act gives the employee an election either to proceed under the Act by accepting the compensation schedules of Article III or, alternatively, to secure relief outside the Act by an action at law for damages against his employer. *Harleysville Insurance Co. v. Wozniak*, 347 Pa.Superior Court 356, 500 A.2d 872 (1985).

4. Because of our disposition of this issue, we need not consider the other issues raised by Friedline.