**Fye v. Woodland Forrest Products Inc.**

C.P. of Clearfield County, no. 95-1473-CD.

*James P. Coletta,* for plaintiffs.
*Dale K. Forsythe,* for defendant.
*Deborah P. Powell* and *Donald M. Lund,* for additional defendants.

REILLY, *P.J.,* September 29, 1998—Dennis and Valerie Fye instituted the above-captioned civil action in order to recover money damages resulting from injuries sustained after Dennis Fye, plaintiff,[1] fell on the stairs/catwalk allegedly under the control of Woodland Forrest Products Inc., defendant.

The facts of the case indicate that plaintiff is a truck driver, and on August 16, 1994, he was weighing a truckload of wood chips to be hauled for defendant at the defendant's chipping mill near Clearfield. The accident occurred that day as plaintiff was ascending a set of steel steps to the weight scales of the chipping

_____

1. Valerie Fye's claim in the instant case is based on her status as Dennis' wife. Thus, for ease in understanding, plaintiff will refer to Dennis Fye.

plant. Plaintiff apparently suffered a fractured foot and nerve, muscle, ligament, and soft tissue damage.

Alleging negligence, plaintiffs' complaint argues that the improper installation and substantial disparity in elevation between the ground and walkway of the stairs/catwalk created a dangerous condition. Defendant has denied any negligence and liability resulting from plaintiff's fall. Further, in 1997, Eichleay Constructors Inc., additional defendant, was brought into the litigation by defendant. Defendant claims that additional defendant had possession and control of the stairs and catwalk, and as contractor, was solely responsible for the construction and maintenance of them.

The crux of the dispute, however, centers on whether plaintiff was an employee of the defendant. Defendant claims that plaintiff was its employee or statutory employee, thus barring recovery based on negligence due to the Pennsylvania Workers' Compensation Act. Plaintiff argues that he was an employee of Robert Raymond d/b/a R.J.'s Garage at all relevant times.

Defendant filed a motion for summary judgment on April 23, 1998. Oral argument on the issue of summary judgment was held on July 27, 1998 before the undersigned. Briefs by the parties having been timely received, the issue is now set for decision.

Plaintiff began working for R.J.'s Garage in May 1994, and was initially assigned to operate a dump trailer, which was used to haul stone. About a month later, R.J.'s decided to lease two trucks to the defendant, which would haul wood chips. Hauling wood chips from a processing plant requires compliance with certain regulations of the Public Utility Commission (PUC). Both parties agree that there was an oral agreement between defendant and R.J.'s Garage, which resulted in the placement of R.J.'s employees on defendant's

payroll. This temporary arrangement allowed R.J.'s to operate through the defendant, who had PUC authorization that R.J.'s lacked. The facts indicate that Bruce Graham, president of Woodland Forrest Products Inc., leased the trucks and drivers from Robert Raymond. Upon R.J.'s procurement of its own PUC license in May 1995, the employees were placed back on R.J.'s payroll.

The manner in which the parties conducted business while operating under their agreement is important to the resolution of the instant matter. Mr. Raymond told plaintiff of the arrangement with defendant because of the PUC problem, and plaintiff never had a discussion with Mr. Graham relating to his employment or the situation generally. R.J.'s told plaintiff that he would be hauling wood chips, and plaintiff was taken to defendant's premises by Mr. Raymond. The wood chips were loaded at the chipping plant in Woodland, and the destination was Johnsonburg. Plaintiff learned what to do by observing, and stated that he did not receive any kind of instruction on the process of loading the chips from the shoots to the truck from either R.J.'s or the defendant.

The parties are in agreement as to the following; plaintiff's checks were issued by defendant, plaintiff was paid in accordance to the pay cycle of defendant's employees, plaintiff filled out W-2 and W-4 forms for defendant, and deductions were taken from plaintiff's check for payroll taxes, workers' compensation insurance, and social security. It is asserted that R.J.'s continued to pay workers' compensation insurance on the plaintiff because of ease in bookkeeping. Two paychecks dated August 18 and August 25, 1994, were issued to plaintiff by defendant for the work done a week prior to each issuance. Plaintiff's rate of pay while

on defendant's payroll was the same as previously established at R.J.'s. Apparently, Mr. Graham did not want to pay that rate initially, but the pay rate was set by the truck owner, Mr. Raymond. Because of the way the payments to R.J.'s were structured, defendant's out-of-pocket expenses remained constant after the truckers from R.J.'s were placed on defendant's payroll.

Both parties had the right to terminate plaintiff's employment. Although plaintiff reported to R.J.'s to determine the number of loads to be hauled per week, this information was also provided to R.J.'s or the drivers by the defendant. R.J.'s had no authority to decide the number of loads going out or the number of trips to be made, although the papers received by the plaintiff from the scale in Johnsonburg for the week were submitted to Mr. Raymond. The only instruction given to plaintiff by R.J.'s was the general caution given to all the drivers not to overload. Since the trucks were leased from R.J.'s and under their control, R.J.'s was responsible for repairs.

After plaintiff's accident, another driver, Ron Hensel, was sent by R.J.'s to pick up the truck, which was parked near plaintiff's home. Incidentally, Mr. Hensel was later dismissed by R.J.'s. As previously noted, R.J.'s obtained a PUC license, and the drivers were placed back on its payroll. In addition, at the time of the deposition of Mr. Raymond, R.J.'s Garage had apparently gone through chapter seven bankruptcy proceedings.

In considering a motion for summary judgment, the trial court must examine the entire record. *Morin v. Traveler's Rest Motel Inc.,* 704 A.2d 1085, 1086 (Pa. Super. 1997) (citing *Merriweather v. Philadelphia Newspapers Inc.,* 453 Pa. Super. 464, 684 A.2d 137 (1996)). Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Hopewell Estates Inc. v. Kent,* 435 Pa. Super. 471, 475, 646 A.2d 1192, 1194 (1994) (citing Pa.R.C.P. 1035.1, 42 Pa.C.S.). Summary judgment may be entered only in cases where the right is clear and free from doubt. *Id.* In addition, the record must be viewed in the light most favorable to the non-moving party, and all doubts as to existence of a genuine issue of material fact must be resolved against the moving party. *Pennsylvania State University v. County of Centre,* 532 Pa. 142, 145, 615 A.2d 303, 304 (1992) (citing *Marks v. Tasman,* 527 Pa. 132, 135, 589 A.2d 205, 206 (1991)).

The record contains excerpts from the depositions of Mr. Fye, Mr. Raymond and Mr. Graham, which were submitted as exhibits in connection with the motion for summary judgment. In accordance with Pa.R.C.P. 1035.3, relating to the non-moving party's burden in response to a motion for summary judgment, plaintiffs have also supplemented their motion in opposition to summary judgment with excerpted deposition testimony.

The issue of whether an employer-employee relationship exists is a question of law. *Northern Central Bank and Trust Co. v. W.C.A.B. (Kontz),* 88 Pa. Commw. 277, 279, 489 A.2d 274, 276 (1985). Moreover, "[w]here the facts are not in dispute, and the evidence leaves no sufficient ground for inconsistent inferences therefrom, the question as to who is the servant's employer is a matter for the determination of the court, but, where the evidence presents an issue of fact, or different inferences can reasonably be drawn therefrom, the ques-

tion is one for determination by the jury." *Mature v. Angelo,* 373 Pa. 593, 598, 97 A.2d 59, 61 (1953).

The Pennsylvania Workers' Compensation Act provides a remedy to employees injured while engaged in the furtherance of the business or affairs of the employer. 77 P.S. §§411, 481. As defined by the Act, "injury" and "personal injury" includes "injuries sustained while the employee is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employee, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employee's presence thereon being required by the nature of his employment." 77 P.S. §411(1). In short, an employer's liability for injury to an employee under the Pennsylvania Workers' Compensation Act is exclusive; therefore, employers and statutory employers are immune from negligence actions under the Act. See generally, *Anskis v. Fischer,* 326 Pa. Super. 374, 474 A.2d 287 (1984).

The existence of an employment relationship is determined by considering several factors: control of the manner in which the work is to be done; responsibility for result only; terms of agreement between the parties; nature of the work or occupation; skill required for performance; whether the one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether work is a part of the regular business of the employer; and the right of the employer to terminate the employment at any time. *Duquesne Truck*

*Service v. W.C.A.B. (McKeesport Truck Service),* 165 Pa. Commw. 145, 154, 644 A.2d 271, 275 (1994) (citing *J. Miller Co. v. Mixter,* 2 Pa. Commw. 229, 277 A.2d 867 (1971)). Other matters commonly considered in analyzing employment situations include: carrying of an individual as an employee on company payroll records; deduction of income taxes and social security contributions from his earnings; the payment of unemployment compensation; and the inclusion of an individual in workers' compensation and other insurance coverage held by the company. *Duquesne Truck Service* at 154, 644 A.2d at 275-76.

Control is also an essential element in borrowed employee cases, and under the common-law definition of the master-servant relationship, whether a servant furnished by one person to another becomes the employee of the person to whom he is loaned is determined by whether "he continues liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired." *Ashman v. Sharon Steel Corp.,* 302 Pa. Super. 305, 314, 448 A.2d 1054, 1059 (1982). The right to control performance of work is the overriding factor in determining whether employee-employer relationship exists. *JFC Temps Inc. v. W.C.A.B. (Lindsay),* 545 Pa. 149, 680 A.2d 862 (1996). Moreover, the existence of the right to control the work to be done and the manner of performance is critical irrespective of whether the control is exercised. *Mature v. Angelo,* 373 Pa. 593, 596, 97 A.2d 59, 60 (1953).

In "borrowed employee" cases, facts which indicate that "an employee remains in the service of his original employer include the original employer's right to select the employee to be loaned and to discharge him at

any time and send another in his place, the loaned employee's possession of a skill or special training required by the work for the second employer, and employment at a daily or hourly rate for no definite period." *W.W. Friedline Trucking v. W.C.A.B. (Reynolds),* 151 Pa. Commw. 38, 41, 616 A.2d 728, 729 (1992) (citing *Daily Express Inc. v. Workmen's Compensation Appeal Board,* 46 Pa. Commw. 434, 436-37, 406 A.2d 600, 601-602 (1979)). Also useful in borrowed employee cases is "the fact that the second employer designates the work to be done and where it is to be done does not militate against the first employer-employee relationship." *W.W. Friedline Trucking,* 151 Pa. Commw. at 41, 616 A.2d at 730. In addition, there is a factual presumption that when a person is engaged in the business of renting out trucks, and furnishes a driver as part of the hiring of the truck, that the driver remains in the employ of his original employer, and, unless that presumption is overcome by evidence that the borrowing employer in fact assumes control of the employee's manner of performing the work, the servant remains in the service of his original employer. *Id.* at 41, 616 A.2d at 729. In *W.W. Friedline Trucking v. W.C.A.B. (Reynolds), supra,* Conn Trucking leased drivers and trucks to W.W. Friedline Trucking in order to take advantage of Friedline's PUC permit. The court considered previously mentioned principles of the law and several factors, including the lease, Conn hired and paid the driver, driver worked for Conn before Conn leased the trucks to Friedline, Conn instructed driver where and when to pick up the load, Conn told driver where to deliver load, Friedline never specifically

told driver to pick up a load at a certain time and Friedline did not decide which drivers would be used. Both James Conn and Wayne Friedline, the owners of the trucking companies in question, believed driver was an employee of Conn. Therefore, based on the conduct and testimony of the parties, Conn was determined to be the injured driver's employer. *W.W. Friedline Trucking v. W.C.A.B. (Reynolds),* 151 Pa. Commw. 38, 616 A.2d 728 (1992).

The right to instruct a driver as to the route to take is also a guide for determining where the control lies. *Wilkinson v. K-Mart,* 412 Pa. Super. 434, 440, 603 A.2d 659, 662 (1992) (citing *Lego v. Workmen's Compensation Appeal Board,* 66 Pa. Commw. 593, 599, 445 A.2d 1324, 1326-27 (1982)). Further, "the presence of the lessee's logo on the side of the tractor raise[s] a rebuttable presumption that 'the one to whom the logo refers is the employer of the operator.' " *Id.* With regard to control, the determining factor is the actual conduct of the parties even when a contractual provision is involved. *Wilkinson,* 412 Pa. Super. at 440-41, 603 A.2d at 662.

The borrowed employee doctrine is closely related to the statutory employer issue, and both may provide immunity for the employers under the Workers' Compensation Act. *Mathis v. United Engineers & Constructors Inc.,* 381 Pa. Super. 466, 554 A.2d 96 (1989). According to the Pennsylvania Workers' Compensation Act, statutory employer status in a negligence action is controlled by 77 P.S. §52, which states: "[a]n employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employee or contractor, for the performance upon such premises of a part of the employer's regular busi-

ness entrusted to such employee or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employee."[2]

Statutory employer status focuses on contractors and does not include an owner or entrepreneur. *Gniewek v. 1700 Place Apartments,* 435 Pa. Super. 479, 646 A.2d 1196 (1994). Specifically, "contractor" does not include "a contractor engaged in an independent business, other than that of supplying laborers or assistants, in which he serves persons other than the employer in whose service the injury occurs, but shall include a subcontractor to whom a principal contractor has sublet any part of the work which such principal contractor has undertaken." 77 P.S. §25. In establishing a statutory employment relationship, the following elements must be shown: "(1) an employer who is under contract with an owner or one in the position of an owner, (2) premises occupied by or under the control of such employer, (3) a subcontract made by such employer, (4) part of the employer's regular business entrusted to such subcontractor and (5) an employee of such subcontractor." *Dougherty v. Conduit & Foundation Corp.,* 449 Pa. Super. 405, 410, 674 A.2d 262, 265 (1996) (citing *McDonald v. Levinson Steel Co.,* 302 Pa. 287, 153 A. 424 (1930)).

Further,

"[V]ery great care . . . must be exercised before allowing an employer to avoid his liability at common law by asserting that he is a statutory employer. Section 203 of the Workmen's Compensation Act, which was

---

2. 1915, June 2, P.L. 736, art. II, §203. Reenacted and amended 1937, June 4, P.L. 1552, §1; 1939, June 21, P.L. 520 §1.

designed to extend benefits to workers, should not be casually converted into a shield behind which negligent employers may seek refuge." *Travaglia v. C.H. Schwertner & Son Inc.,* 391 Pa. Super. 61, 65, 570 A.2d 513, 515 (1989) (citing *Stipanovich v. Westinghouse Electric Corp.,* 210 Pa. Super. 98, 106, 231 A.2d 894, 898 (1967)).

While a "statutory employer" avoids liability for negligence under certain conditions, this court need not explore this argument any further because the facts do not support that defendant falls within the applicable provisions of the Act.

In conclusion, who had the right to control the day-to-day activities of the plaintiff is crucial to the determination of this case. In determining plaintiff's employer, the main issue is, given the facts presented, who had the right to control the work done by the plaintiff and the manner in which it was performed. Certainly, both parties had several factors to buttress their arguments. However, the material facts are not in dispute and indicate that Mr. Raymond hired plaintiff, showed him the premises of the defendant, established his pay rate, received the scale slips, and dealt with the situation after the accident, among other things. As to the peripheral matters, defendant did pay the plaintiff, and deductions were taken from plaintiff's check for workers' compensation and social security. Clearly, the arrangement between defendant and R.J.'s Garage was due to PUC regulations. The facts show that the parties knew this would be a temporary arrangement. Therefore, based on all the facts presented, this court must find that plaintiff was an employee of R.J.'s Garage at the time of the accident.

Wherefore, the court enters the following:

## ORDER

Now, September 29, 1998, consistent with the foregoing opinion, this court enters the following findings:

(1) Motion for summary judgment filed on behalf of defendant, Woodland Forrest Products Inc., is hereby denied.

(2) Motion in opposition to summary judgment filed on behalf of the plaintiffs, Dennis and Valerie Fye, is hereby granted.