881 A.2d 54 (2005)
AMERICAN ROCK MECHANICS, INC., Petitioner
v.
WORKERS' COMPENSATION APPEAL BOARD (BIK AND LEHIGH CONCRETE TECHNOLOGIES), Respondents.
Commonwealth Court of Pennsylvania.
Submitted on Briefs June 17, 2005.
Decided August 19, 2005.
*55 William F. Thomson, Jr., Fairless Hills, for petitioner.
Katherine M. Lenahan, Scranton, for respondent.
BEFORE: FRIEDMAN, J., SIMPSON, J., and KELLEY, Senior Judge.
OPINION BY Judge SIMPSON.
American Rock Mechanics, Inc. (Amroc) petitions for review of an order of the Workers' Compensation Appeal Board (Board), affirming the Workers' Compensation Judge's (WCJ) grant of Christopher Bik's (Claimant) claim petition against Amroc. Because we agree that under the appropriate borrowed employee analysis Amroc was the responsible employer at the time of Claimant's injury, we affirm.
Claimant filed two claim petitions, one against Amroc and the other against Lehigh Concrete Technologies (Lehigh), regarding injuries he received to his right arm while in the course of his employment with either Amroc or Lehigh. The nature and extent of the injuries were stipulated. The only question before the WCJ was whether Amroc or Lehigh was the responsible employer. After a hearing, the WCJ made the following findings of fact.
Claimant testified he began working for Amroc as a drill operator in 1997. Amroc sent him and his drill to various locations where Claimant operated the drill. On February 19, 2002, Claimant was operating the drill for Lehigh at a property owned by Pennsylvania Power and Light (PP & L). Amroc owned the drill and the compressor and provided Claimant with safety equipment and health insurance (subject to a co-pay). On the date in question, Lehigh's employees directed him where to drill, but he did the drilling with Amroc's equipment. Claimant was required to fill out a work report for his supervisor at Amroc to describe the work done on-site.
Lehigh's vice president testified that following a bid to perform work for PP & L, she contacted Amroc to request a drill and operator. Lehigh maintained ultimate responsibility for the location and depth of the holes and made all field measurements. Claimant was the only employee of Amroc at the site.
Amroc presented the testimony of Lehigh's project foreman, who stated, although he was present at the site, most of the direction for location and depth of the holes drilled by Claimant was provided by PP & L engineers and a consulting engineer. Another Lehigh employee on-site assisted in the pumping operation and recorded the amount of grout placed in each hole. Lehigh's employee directed Claimant to pull the pipe out when sufficient grout accumulated, but the overall process was a cooperative effort.
Amroc also presented the testimony of its vice president, who stated no written agreement existed between Amroc and Lehigh for the lease of Claimant and the drill. Amroc rents the drill for $120 per hour, and requires its operator go with the drill. Amroc's vice president never went to the job site, never inspected the work involved, and had no contact with the general contractor or project engineer. After Claimant was injured, Amroc provided an alternate operator for the drill. Amroc maintained workers' compensation insurance on Claimant.
Amroc's office manager confirmed no written agreement existed between Amroc and Lehigh concerning what would happen in case of injury.
The WCJ credited each witness' testimony and found them consistent. The WCJ concluded Amroc was the responsible employer. *56 The WCJ noted an equitable analysis required the insurance carrier that collected the premium be held responsible or that carrier would receive a windfall. Moreover, the WCJ noted the case law holds that when a piece of equipment is leased with an operator, the lessor is not responsible for injuries to the operator. Accordingly, the WCJ granted Claimant's claim petition against Amroc and dismissed his claim petition against Lehigh.
On Petitioner's appeal, the Board, citing our Supreme Court's decisions in Mature v. Angelo, 373 Pa. 593, 97 A.2d 59 (1953), and JFC Temps, Inc. v. Workmen's Comp. Appeal Bd. (Lindsay and G & B Packing), 545 Pa. 149, 680 A.2d 862 (1996), concluded Amroc maintained the right of control over Claimant and, thus, was the responsible employer. The Board noted Lehigh's directions as to where and how deep to place the holes did not rise to the level of giving Lehigh control over Claimant. Moreover, the Board pointed out the directions were mostly given by PP & L engineers, rather than Lehigh's employees. Accordingly, the Board affirmed the WCJ's decision, although it did so on the slightly different legal analysis that Amroc maintained control over Claimant.
Due to its decision that Amroc maintained control over Claimant, the Board declined to reach Amroc's argument that the WCJ erred in applying an equitable analysis to conclude Amroc was responsible because it paid for workers' compensation insurance for Claimant.
Amroc now appeals to this Court, raising four arguments.[1] First, Amroc questions whether findings made by the Board are supported by substantial evidence. However, nowhere in the summary of argument or argument sections of its brief does Amroc address this argument. Further, Amroc does not specify which findings are unsupported by substantial evidence, and Amroc does not cite any authority supporting this argument.
Assuming that the Board made findings, as opposed to conclusions of law, we determine this issue is waived. Browne v. Commonwealth, 843 A.2d 429, 435 (Pa.Cmwlth.2004)("At the appellate level, a party's failure to include analysis and relevant authority results in waiver."). See also City of Phila. v. Berman, 863 A.2d 156 (Pa.Cmwlth.2004)(issue waived, even if raised in statement of questions presented and summary of argument portions of brief, if not developed in argument portion of brief); 2 G. Ronald Darlington et al., Pennsylvania Appellate Practice § 2119.4 (2d ed.2002)(issue waived if no relevant authority cited).
Second, Amroc argues the Board committed an error of law. Amroc argues a careful review of the facts establishes Lehigh maintained control over Claimant's work at the job site and, therefore, Lehigh is the responsible employer.
Amroc relies heavily on JFC Temps. There, our Supreme Court was asked to determine which employer was responsible for injury to a temporary tractor-trailer driver. In reviewing the relevant case law, our Supreme Court noted,
The law governing the "borrowed" employee is well-established. The test for determining whether a servant furnished by one person to another becomes the employee of the person to whom he is loaned is whether he passes under the latter's right of control with *57 regard not only to the work to be done but also to the manner of performing it. The entity possessing the right to control the manner of the performance of the servant's work is the employer, irrespective of whether the control is actually exercised. Other factors which may be relevant include the right to select and discharge the employee and the skill or expertise required for the performance of the work. . . . Although the examination of these factors guides the determination, each case must be decided on its own facts.
Id. at 153, 680 A.2d at 864 (citations omitted).
JFC Temps, while instructive as to determining who controls a claimant's work, did not involve a leased employee and equipment. In such cases, a presumption arises, as our Supreme Court explained in Mature:
Where one is engaged in the business of renting out trucks, automobiles, cranes, or any other machine, and furnishes a driver or operator as part of the hiring, there is a factual presumption that the operator remains in the employ of his original master, and, unless that presumption is overcome by evidence that the borrowing employer in fact assumes control of the employe's manner of performing the work, the servant remains in the service of his original employer.
Mature, 373 Pa. at 596, 97 A.2d at 61 (emphasis in original). In Mature, our Supreme Court laid out seven principles to be followed in borrowed employee cases, as summarized by this Court (with emphasis added) in Daily Express, Inc. v. Workmen's Comp. Appeal Bd., 46 Pa.Cmwlth. 434, 406 A.2d 600, 601-02 (1979):
(1) [O]ne who is in the general employ of one employer may be transferred to the service of another in such a manner that he becomes an employee of the second employer; (2) whether or not the transferred employee becomes the employee of the second employer depends on whether the first employer passes to the second employer not only the right to control the employee's work, but also his manner of performing it; (3) it is enough to establish the employer-employee relationship if the employer has the right to control the employee's manner of performance of work, regardless of whether the right is ever exercised; (4) where one is engaged in the business of renting out trucks and furnishes a driver as part of the hiring of the truck,[[2]] there is a presumption that the driver remains in the employ of his original employer until there is evidence that the second employer in fact assumed control over the employee's manner of performing his work; (5) facts which indicate that an employee remains in the service of his original employer include the original employer's right to select the employee to be loaned and to discharge him at any time and send another in his place, the loaned employee's possession of a skill or special training required by the work for the second employer, and employment at a daily or hourly rate for no definite period; (6) the fact that the second employer designates the work to be done and where it is to be done does not militate against the first employer-employee relationship; and (7) when the facts are undisputed, the determination of who is the employee's employer is one of law, but when the facts are disputed, the determination is one of fact.
*58 In Daily Express, this Court determined the driver remained an employee of the first employer. In that case, the driver was given some safety instructions by the second employer, the second employer did not select the driver to perform the job, and a different driver could be sent at any time chosen by the first employer.
This Court addressed a similar situation in W.W. Friedline Trucking v. Workmen's Comp. Appeal Bd. (Reynolds), 151 Pa.Cmwlth.38, 616 A.2d 728 (1992). There, we confirmed the presumption in a borrowed employee case where the employee and a piece of equipment are leased. Further, we concluded a driver remained the employee of the first employer even where the second employer directed the driver where a load was to be picked up and where it was to be delivered.
Here, there is no evidence Lehigh enjoyed any authority to hire or fire Claimant or to select the operator of the drill. These aspects of control remained with Amroc at all times.
Regarding the manner of performing the work, Claimant was trained in the use of the drill by Amroc, not by Lehigh. There is no evidence Lehigh employees were involved with details of drill operation. The only evidence of any Lehigh "authority" over Claimant was information given to him about the desired results of operating the drill, such as location and depth of holes. The WCJ concluded most of the direction for the location and depth of the holes was given to Claimant by PP & L's engineers, rather than by Lehigh employees.
The evidence is insufficient to overcome the presumption that Amroc remained Claimant's employer. As stated in Daily Express, the fact that the second employer, Lehigh, designated the work to be done and where it was to be done does not militate against the first employee-employer relationship. Similar to the situation in W.W. Friedline Trucking, giving Claimant information about where to place the holes, how deep they should be, and when sufficient grout was in place does not establish control over the manner of work. Thus, Lehigh employees gave Claimant the specifications necessary to complete the job, but they did not give Claimant instructions as to how to operate the drill. Accordingly, we conclude the Board did not err in determining Amroc was the responsible employer.
Third, Amroc contends the Board erred in adopting the WCJ's equitable analysis. However, as noted above, the Board did not reach this issue because it concluded Amroc maintained control over Claimant. The Board did not adopt the WCJ's equitable analysis, but rather applied the correct legal test regarding which entity maintained control over Claimant. We discern no error.
Fourth, Amroc assigns error in the assessment of unreasonable contest attorneys' fees of $1000.00. However, we conclude the issue is waived for failure to develop it or cite authority for it. Browne; City of Phila.[3]
For all the foregoing reasons, the decision of the Board is affirmed.

*59 ORDER

AND NOW, this 19th day of August, 2005, the decisions of the Workers' Compensation Appeal Board in the above-captioned cases are hereby AFFIRMED.
NOTES
[1] Our review is limited to determining whether constitutional rights were violated, an error of law was committed, or any findings of fact are unsupported by substantial evidence. JFC Temps, Inc. v. Workmen's Comp. Appeal Bd. (Lindsay and G & B Packing), 545 Pa. 149, 680 A.2d 862 (1996).
[2] As our Supreme Court indicated in Mature, this presumption applies not only to trucks but also to other machines and equipment leased with an operator.
[3] The only statement made by Amroc regarding attorneys' fees is the conclusory statement that, "Since [Amroc] followed well-settled judicial precedent in making the decision to deny and contest this claim, it cannot be assessed attorney fees for an unreasonable contest." Petitioner's Brf. at 27. Amroc provides no analysis of or authority for this statement. Such analysis and authority would be helpful in addressing the presumption that Amroc remained the employer of the injured operator of leased equipment.